94 So.2d 426

Sam MACALUSO

v.

Harris I. THIBODEAUX and London Guarantee and Accident Company, Limited, and Abry Bros.

No. 42865.

Feb. 25, 1957.

Rehearing Denied April 1, 1957.

Montgomery, Barnett, Brown, Sessions & Read, Cicero C. Sessions, for appellant.

Baldwin, Haspel & Molony, Robert R. Rainold, Richard C. Baldwin, New Orleans, for defendant-appellant.

Piazza & Gulotta, George Piazza, New Orleans, for plaintiff-appellee.

HAMITER, Justice.

Damages in the sum of $31,420, plus attorneys' fees and penalties, were demanded in this action for the alleged breach of a building contract to make changes and improvements to a dwelling owned by plaintiff. Named as defendants were the contractor, Harris I. Thibodeaux, the surety, London Guarantee and Accident Company, Ltd., and a subcontractor, Abry Bros., a partnership which had sub-contracted a portion of the work (these are sometimes referred to hereinafter as contractor, surety, and subcontractor, respectively).

In a written contract of date September 15, 1950, Thibodeaux agreed, for a consideration of $15,375 payable in five installments of $3,075 each, to raise and remodel plaintiff's six room dwelling and to construct beneath it a structure suitable for store purposes. He furnished a bond, with the London Guarantee and Accident Company, Ltd. as his surety; and he sub-contracted the raising job to Abry Bros.

After the subcontractor had raised the house, and had placed it on jacks, Thibodeaux proceeded to build (during a period of several weeks) the concrete lower wall structure on which it would rest. On the completion thereof the contractor received from plaintiff the first installment ($3,075) in accordance with the terms of the contract, and he notified Abry Bros. to lower the house onto the newly constructed walls.

On November 22, 1950, while the sub-contractor was engaged in performing the lowering operation, the house moved forward and the front portion thereof fell, apparently because of the failure of some of the supporting jacks. Looking toward a rectifying of the condition conferences were held by the interested persons until December 14, 1950, when Thibodeaux caused the dwelling to be demolished and sold the salvaged materials for $50. Fur-

ther attempts for an amicable settlement followed; but these proved futile and plaintiff instituted this suit on May 25, 1951.

Thibodeaux and his surety filed answers in which they denied liability to plaintiff. Additionally, they called Abry Bros. in warranty, alleging that the damage sustained by plaintiff resulted solely from a breach of the subcontract for raising.

Abry Bros. answered plaintiff's petition in like manner. Also, it filed exceptions of no right and no cause of action to the call in warranty. These exceptions were sustained by the district court.

Trial of the controversy commenced on July 13, 1953, and thereafter evidence was adduced intermittently until November 15, 1954 when the case was continued indefinitely. Meanwhile, Act 433 of 1954 (Third Party Practice Act—LRS 13:3381 et seq.) was enacted and, purportedly on the authority of that statute, Thibodeaux and his surety filed third party petitions against Abry Bros. (for the purpose of bringing that partnership into the suit), they alleging therein a breach of the subcontract with Thibodeaux. Exceptions of no right and no cause of action levelled at the third party petitions (or, in the alternative, at the constitutionality of the statute pursuant to which the petitions were filed) were tendered by the subcontractor and were overruled.

In April, 1955, when further trial of the case was had, plaintiff was subjected to cross examination. Also, at that time, the other litigants introduced evidence in defense of plaintiff's demands and in connection with the third party petitions.

Judgment was rendered on December 30, 1955, in favor of plaintiff against Thibodeaux and his surety, in solido, for the sum of $6,075.24; in favor of Abry Bros. rejecting plaintiff's demands as against it; and in favor of Thibodeaux and his surety against Abry Bros. for the sum of $6,057.25, subject to a credit of the $50 received by Thibodeaux for the salvaged materials.

The contractor, surety and subcontractor appealed from the judgment. Plaintiff neither appealed nor answered the appeals.

Thibodeaux and his surety complain here that the trial court was in error in failing to hold Abry Bros. responsible directly to plaintiff and in condemning them for the breach of a contract rendered impossible of performance by the subcontractor. They further urge that such court erred in not permitting their call in warranty. Additionally, the surety maintains that it cannot be cast with Thibodeaux inasmuch as the damages sought by plaintiff were not contemplated by its bond.

Abry Bros. bases its appeal principally on the alleged error of the district court in permitting the filing of the third party

petitions by virtue of which judgment was rendered against it in favor of the contractor and the surety. However, it also urges alternative defenses as hereafter shown.

■ The complaint of Thibodeaux and his surety that the trial court erred in rejecting plaintiff's demand against Abry Bros. cannot be considered. Plaintiff has neither appealed nor answered the appeals of the other litigants and, hence, under no circumstances could we amend the judgment so as to grant that demand.

■ Without merit is the contention that they are not liable to the plaintiff, they maintaining that the contract became impossible of performance due to a breach of the subcontract by Abry Bros. If the contract became impossible of performance it was due solely to the act of Thibodeaux himself in demolishing the dwelling and selling the salvaged materials for $50, a sum which he retained. The great weight of the evidence, as we appreciate it, is to the effect that the house (after it fell) could have been raised again and restored to its former condition at not too great an expense—that is at a cost not out of proportion to the amount involved in the entire contract. The assertion that Thibodeaux was required by the City of New Orleans to demolish the building is not correct. The notice relied on to sustain it simply directed that the then existing condition be remedied, not that the building be demolished.

After considering all of the evidence we have concluded that the contractor unnecessarily, and at his own risk, arranged for and caused the demolishing of the building (even over the protests of the subcontractor). Consequently, Thibodeaux must respond in damages to plaintiff for the failure to perform his contract.

■ The surety's defense that damages of that nature were not contemplated by its bond cannot be sustained. The bond provides that it shall run "in favor of said owner * * * for the true and faithful performance of said contract * * *." The loss suffered by plaintiff here is directly attributable to a failure by the contractor to faithfully perform his contract. The surety, therefore, is solidarily liable with the contractor to the plaintiff.

■ As to the extent of the damages sustained by plaintiff the trial judge found that his building, which was totally demolished by the contractor, had a value of $6,300. Although there is some testimony showing a lesser value, our review of all of the evidence on this point convinces us that the judge was correct in his finding.

Of course, before the house fell Thibodeaux had constructed three concrete walls to support it (for which construction he and his surety claim credit). Assuming

that credit for such construction is due as claimed we are satisfied from the record that the value of the walls does not exceed the $3,075 which plaintiff has already paid to Thibodeaux—an amount that would offset such credit claim. In fact, we are inclined to the belief that their worth is less than that amount.

█ The district court awarded damages to plaintiff in the total sum of $6,075.25. Since he failed to appeal from the judgment or to answer the appeals of the contractor and surety we are unable to increase the award to the full value ($6,300) of the destroyed dwelling. Moreover, such failure makes unnecessary a consideration of his demands for attorneys' fees and liquidated damages.

█ With respect to the demand of Thibodeaux and his surety against Abry Bros. we are of the opinion that the district court incorrectly refused them the right to call the subcontractor in warranty. Clearly the demand was based on an implied warranty in the agreement between Abry Bros. and Thibodeaux.

█ The position of Abry Bros. is that the call in warranty was improper for the reason that there was no privity between it and the plaintiff. However, this court has expressly repudiated the once prevailing doctrine that the right of a defendant to call in warranty is dependent on privity of contract as between the plaintiff and

the party called, the present jurisprudence being that such a right depends only on privity existing between the party making the call and the warrantor. See Muntz v. Algiers & Gretna Railway Company, 114 La. 437, 38 So. 410 and Bennett v. Weinberger, 160 La. 1001, 107 So. 780. Hence, we must conclude that the contractor and surety, having alleged the subcontract and the breach thereof, were entitled to call Abry Bros. in warranty.

█ Ordinarily, in such a situation as this (here a call in warranty has been improperly stricken), the judgment in its entirety would be reversed and the case remanded for a retrial on both the principal demand and the call in warranty, the reason being to afford protection to the rights of the warrantee (the defendant). See Blanchard v. Norman-Breaux Lumber Company, Inc., 216 La. 551, 44 So.2d 112. In the instant cause, however, whatever harm may have been done to Thibodeaux and his surety by the improper striking of the call in warranty was remedied by the court's allowing them later to bring Abry Bros. into the suit on the same demand under the provisions of the Third Party Practice Act (LRS 13:3381 et seq.). This is conceded by their counsel.

It is true that Abry Bros. is now resisting the judgment rendered against it on the ground that the mentioned statute does not permit a third party to be brought into the case after actual trial thereof has

begun (as was the situation here), or, in the alternative (if it does), the law is unconstitutional inasmuch as he would be denied the right to cross examine plaintiff's witnesses. But conceding arguendo that Abry Bros. is correct in its interpretation of the statute the judgment rendered against it herein was only that which might have resulted on the call in warranty if it had not been improperly stricken.

 In this connection we do not find that Abry Bros. was prejudiced by its not having been brought into the suit through the third party petitions until after the introduction of evidence had begun. Initially it was made a defendant by plaintiff and, as such, it participated in the entire trial of the case. Throughout the proceedings the partnership was represented by counsel who fully cross examined all of the opposing witnesses—those presented before the filing of the third party petitions and those offered afterward—just as if it had been in the case by reason of a call in warranty. And after the filing of the third party petitions Abry Bros. completely presented its defense to the demands therein contained which were essentially the same as those made in the attempted call in warranty.

We think, therefore, that it would serve no useful purpose to reverse the judgment and remand the case merely in order that under the call in warranty the same issues could be retried and the same evidence adduced. This litigation has endured for some six years; and since all interested parties were before the court throughout the entire proceedings (and were fully heard) there should be no further delay in finally determining the controversy.

 Having arrived at this conclusion we have left for consideration only the question of whether there is any liability on the part of Abry Bros. (the subcontractor) and, if so, in what amount. At the time of the accident the dwelling was under the sole control of that partnership; therefore, the latter carried the burden of showing that it was not responsible for the failure to perform in a workmanlike manner the subcontract for raising. This it has failed to do, each of the partners testifying that actually he did not know what caused the front portion of the house to fall.

But the trial court erred, we think, in condemning Abry Bros. for the full amount of the judgment rendered in favor of plaintiff against Thibodeaux and his surety. As we have already indicated it was not necessary that the dwelling be demolished, the evidence clearly sustaining the defense of the subcontractor that it could have reraised and repaired the house and finished its work in accordance with the agreement. Moreover, it offered to thus perform but was prevented from doing so by Thibodeaux's demolishing of the building over its protests.

Consequently, Abry Bros. is liable only for what it would have cost to carry out and complete the subcontract, plus the damages sustained by the concrete walls erected by Thibodeaux. And after considering all of the evidence on this point we think that $1,500 would be a fair and proper award. Of this amount $1,200 would be for reraising and repairing the dwelling and the remainder ($300) for the damage caused to the walls.

For the reasons assigned the judgment appealed from is amended by reducing the award in favor of Harris I. Thibodeaux and the London Guarantee and Accident Company, Ltd. against Abry Bros. (and the individual partners thereof) from $6,-057.25 to $1,500; and, as amended, the judgment is affirmed. Thibodeaux and the London Guarantee and Accident Company, Ltd. are to pay the costs of this appeal.

FOURNET, J., absent.

SIMON, J., recused.

On Rehearing

PER CURIAM.

The defendants Harris I. Thibodeaux and his surety, the London Guarantee & Accident Company, Ltd., correctly point out in their application for rehearing that we erred in stating in the body of our opinion that the plaintiff had been awarded a judgment against them in the amount of $6,075.24 when, in truth, the damage award was $6,057.25. This was obviously a typographical error.

Our decree, which is correct, remains in effect and the rehearing is refused.