383 So.2d 1291 (1980)
CONSTRUCTION MATERIALS, INC.
v.
AMERICAN FIDELITY FIRE INSURANCE COMPANY.
No. 13082.
Court of Appeal of Louisiana, First Circuit.
February 25, 1980.
*1292 Andre C. Broussard, Baton Rouge, for plaintiff-appellee Construction Materials, Inc.
Paul H. Spaht, Baton Rouge, for defendant-appellant American Fidelity Fire Insurance Co.
James F. Abadie, Baton Rouge, for defendant-appellee Gatlin Construction Co.
Before ELLIS, CHIASSON and PONDER, JJ.
ELLIS, Judge:
This is a suit by Construction Materials, Inc. for the price of materials sold to Gatlin Construction Company, a highway contractor, which was constructing certain drainage structures in West Feliciana Parish under contract with the State of Louisiana. Defendants herein are Gatlin and American Fidelity Fire Insurance Company, the surety on the contract. After trial on the merits, judgment was rendered in favor of plaintiff and against both defendants, in solido, as prayed for. American has appealed.
The case was tried on the following stipulation of fact:
"Plaintiff, Construction Materials, Inc. and defendant, American Fidelity Fire Insurance Company, do hereby stipulate as follows:
"A. That the materials at issue in the captioned suit are signs, barricades, and component parts thereof (lens, bulbs, batteries, lights, etc.) purchased by Gatlin Construction Company from the plaintiff and used by said contractor during the performance of its contract with State of Louisiana, Department of Highways, which project was more particularly designated as `Construction of West Feliciana Parish Roads, (culverts), West Feliciana Parish, Louisiana, State Project No. 713-39-37, Federal Aid Project No. OS-0163(001).
"B. That while the aforesaid materials were used as signs and barricades during the performance of the contract by Gatlin Construction Company on the above mentioned project, the materials were not physically incorporated into the work, but could be carried away from and used on other jobs.
"C. Some of the batteries purchased by Gatlin Construction Company from plaintiff, which batteries were used to furnish electrical power to the signs and barricades involved herein, were depleted during this job."
The performance bond, which is in evidence, obligates the surety, in the event of the default of Gatlin, to "pay all bills for materials and labor entered into the construction of said work, or used in the course of the performance of the work; . . . ."
Despite the broad language of the bond, American contends that it is not liable to plaintiff because its liability cannot be extended *1293 beyond that provided for by the law governing public contracts. R.S. 38:2241 and 2242 provide:
"§ 2241. Written contract and bond
"Whenever the state or any state board or agency or any political subdivision of the state enters into a contract in excess of one thousand dollars for the construction, alteration, or repair of any public works, the official representative of the governing authority shall reduce the contract to writing and have it signed by the parties. He shall require of the contractor a bond, with good, solvent, and sufficient surety in a sum not less than fifty percent of the contract price for the faithful performance of the contract with an additional obligation for the payment by the contractor or subcontractor for all work done, labor performed, or material or supplies furnished for the construction, alteration, or repair of any public works, or for transportation and delivery of such materials or supplies to the site of the job by a for hire carrier, or for furnishing materials or supplies for use in machines used in the construction, alteration, or repair of any public works. No modification, omissions, additions in or to the terms of the contract, in the plans or specifications or in the manner and mode of payment shall in any manner affect the obligation of the surety. The bond shall be executed by the contractor with surety or sureties approved by the officials representing the state, state board or agency, or political subdivision and shall be recorded with the contract in the office of the recorder of mortgages in the parish where the work is to be done not later than thirty days after the work has begun."
"§ 2242. Filing of sworn statements of amounts due; payment by contracting authority
"Any person to whom money is due for doing work, performing labor, or furnishing materials or supplies for the construction, alteration or repair of any public works, or furnishing materials or supplies for use in machines used in the construction, alteration, or repair of any public works, excluding persons to whom money is due for the lease or rental of movable property, but including any architect employed by the owner or his duly authorized agent or representative or engaged by the contractor or subcontractor and including any consulting engineer employed by the owner or his duly authorized agent or representative or engaged by the contractor or subcontractor in connection with the building of any public work, may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority or of notice of default of the contractor or subcontractor, file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done. After the filing and recordation of claims, any payment made by the governing authority without deducting the amount of the claims so served on it shall make the authority liable for the amount of the claim. If an architect or engineer has not been employed by the contractor or subcontractor he shall have no claim to or privilege on the funds due the contractor or subcontractor, nor shall such architect or engineer be within the coverage of the payment and performance bond required of the contractor by R.S. 38:2241."
It is settled that only materials which are actually incorporated into or consumed during the construction of the public work are entitled to the protection of R.S. 38:2241 and 2242, supra. Slagle-Johnson Lumber Co. v. Landis Construction Company, Inc., 379 So.2d 479 (La.1980). The materials delivered in this case, which were not incorporated in the public work, would not be entitled to the protection of those statutes.
However, plaintiff contends, and the lower court held, that under the broader language of the bond, there is a right to recover the amounts due for the said materials from the surety on the bond.
Our courts have consistently held that a public works bond can be neither broader nor narrower than the law which *1294 provides for it; that anything provided for by law and omitted from the bond must be read into it; and that anything provided by the bond which goes beyond the provisions of the law must be read out of it. Long Bell Lumber Co. v. S. D. Carr Const. Co., 172 La. 182, 133 So. 438 (1931); Louisiana Highway Commission v. McCain, 197 La. 359, 1 So.2d 545 (1941); Martinolich v. Albert, 143 So.2d 745 (La.App. 1st Cir. 1962).
The result reached by the trial judge is contrary to the foregoing authorities, and other cases on the same points, which have remained consistent for over 50 years. Only in the recent case of E. L. Burns Co., Inc. v. Cashio, 302 So.2d 297 (La.1974), has the Supreme Court questioned the rule of strict construction applied to public works bonds, and then with reference to the prescriptive period contained herein.
Although we see little merit in a rule of law which permits a surety to evade the conditions of its own bond, which it has written, and for which it has charged a premium, we think the point involved is now too well settled to admit of dispute at this level.
The judgment appealed from is therefore reversed and there will be judgment in favor of defendant, dismissing plaintiff's suit at its cost.
REVERSED AND RENDERED.